| | |
|---|---|
| **From:** | Lawren Garcia |
| **To:** | NMDdb_Proposed Text Browning |
| **Cc:** | Antonia Roybal-Mack; Amelia Nelson; Francheska Bardacke; Ian; Sydow, Nicholas (USANM); Yang, Carrie (USANM); Go, Rafael (USANM) |
| **Subject:** | Trambley, et. al. v. FEMA; 1:26-cv-01824-JB-JFR - Proposed Order on Plaintiffs" Emergency TRO |
| **Date:** | Friday, June 19, 2026 5:00:14 PM |
| **Attachments:** | Outlook-A logo wit.png |
| | Doc 2 2026-06-05_MTN for TRO.pdf |
| | Doc 2-1 2026-06-05_Memorandum of Law in Support of MTN for TRO.pdf |
| | Doc 10 2026-06-13_FEMA"s Response to MTN for TRO.pdf |
| | 1 26-cv-01824-JB-JFR_Proposed Order on Plaintiffs" Emergency MTN for TRO.docx |

**CAUTION - EXTERNAL:**

Good afternoon,

Attached for Judge Browning's review and consideration is the proposed *Order on Plaintiffs' Emergency Motion for Temporary Restraining Order* and the corresponding court-endorsed *Motion, Memorandum of Law,* and Defendant's *Response*.

Thank you,



**www.roybalmacklaw.com**

**Lawren Garcia**

Paralegal

**Phone:** 505-288-3500  |  **Fax:** 505-288-3501
**Mailing Address:** P.O. Box 91658, Albuquerque, NM 87199

| **Albuquerque Office (Main)** | **Las Vegas Office** | **Farmington Office** | **Mora Office** |
|---|---|---|---|
| 505-288-3500 | 505-288-3500 | 505-325-1802 | 505-288-3500 |
| 6700 Jefferson St NE Suite A-3 | 719 Douglas Ave | 2117 E. 20th St | 193 State |
| Albuquerque, NM 87109 | Las Vegas, NM 87701 | Farmington, NM 87401 | Highway 518 |
| | | | Mora, NM 87732 |

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW, AND PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.  If the reader of this message is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any review, dissemination or copying of this communication is strictly prohibited.  If you have received this electronic transmission in error, please do not read it, delete it from your system without copying it, and notify the sender by reply e-mail or by calling (505) 288-3500, so that our address record can be corrected.  Thank you.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STEPHANIE TRAMBLEY, PATRICK GRIEGO,
ELIZABETH MONTOYA, THE ESTATE OF JOSE H. MONTOYA,
UNITED WORLD COLLEGE-USA, and
THE ARBITRATION-STAYED PLAINTIFFS,
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.                                                                    No. 1:26-cv-01824-JB-JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY,

Defendant.

## ORDER ON PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

THIS MATTER comes before the Court on the Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction, filed June 5, 2026 (Doc. 2)("Motion"). The Court held an emergency evidentiary hearing on June 15, 2026, during which it received live testimony from Kimi Jackson on behalf of Plaintiff Armand Hammer United World College—USA ("UWC") and Deborah Simpson on behalf of Pendaries Village Community Association ("PVCA"). The Court has also reviewed and relies upon the First Amended Verified Complaint for Declaratory and Injunctive Relief (Doc. 3) and the sworn declarations of Plaintiffs Stephanie Trambley, Patrick Griego, Elizabeth Montoya, and Kimi Jackson (Doc 4), the sworn declaration and testimony of Deborah Simpson (Doc. 7.1), and the sworn declarations of Luz Stearns (Doc 10.1) and Nancy Casper (Doc 10.2).

The primary issues are: (i) whether the Court should enjoin Defendant Federal Emergency Management Agency's ("FEMA") policy of staying the processing and arbitration of economic damages when a claimant's non-economic damages are pending on administrative appeal ("mixed-claim stay"); (ii) whether Plaintiff UWC and PVCA may proceed to *de novo* arbitration because FEMA's failure to issue a final agency determination within 180 days of their Notices of Loss ("NOL") constitutes unreasonable delay under the *TRAC* factors, rendering administrative exhaustion futile, and whether PVCA may arbitrate all claims inclusive of Proof of Loss 4; (iii) whether Plaintiffs Trambley, Montoya, and Griego may sever their economic claims from their appealed non-economic claims to bypass the mixed-claim stay; and (iv) whether FEMA's failure to respond to formal severance and arbitration demands submitted by eleven "Arbitration-Stayed Plaintiffs" and refusal to issue Final Letters of Determination to PVCA and UWC constitutes agency action unlawfully withheld.

The Court concludes that: (i) FEMA's policy of staying economic claims while non-economic claims are appealed delays the expeditious settlement of claims under the Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 104, 136 Stat. 2114, 2168 (2022)("Hermit's Peak Act" or "HPCCFAA"), and is enjoined; (ii) Plaintiff UWC and PVCA may proceed to arbitration *de novo* because FEMA's failure to issue a final agency determination within 180 days of their NOLs constitutes unreasonable delay under 5 U.S.C. § 706(1), rendering the claims constructively denied, and PVCA may arbitrate all claims including Proof Of Loss 4; (iii) Plaintiffs Trambley, Montoya, and Griego are entitled to sever their economic claims and proceed to *de novo* arbitration; and (iv) FEMA's failure to respond to the eleven Arbitration-Stayed Plaintiffs constitutes a constructive denial, ripening their claims for immediate arbitration.

## I.    FINDINGS OF FACT

1.    On April 21, 2026, the Court issued its Memorandum Opinion and Order in *Old Wood, LLC v. FEMA*, No. CIV 24-1142 JB/JFR (D.N.M. April 21, 2026) (Browning, J.), invalidating FEMA's regulations that restricted arbitration to the administrative appeal record. The Court held that the Hermit's Peak Act requires *de novo* arbitration and permits the consideration of extra-record evidence.

2.    FEMA has implemented two distinct administrative blockades that prevent the expeditious settlement of claims. First, following this Court's decision in Old *Wood*, FEMA suspended arbitration proceedings.

3.    Second, in response to FEMA's appeal of this Court's prior rulings determining that non-economic damages are compensable under the HPCC Act, FEMA implemented a "mixed-claim stay" policy. For claims on administrative appeal, where claimants dispute FEMA's final valuation of claims provided in its final Letter of Determination ("LOD"), this policy stays the entirety of the claim, including processing of economic damages for claimants who have non-economic damage portions of their claims pending on administrative appeal. These actions were not the result of standard administrative processing times, but rather a manufactured freeze on dispute resolution in response to this Court's rulings. Consequently, claimants have been trapped in an administrative blockade where FEMA refuses to issue final determinations or permit arbitration, making it procedurally impossible for them to exhaust their administrative remedies.

4.    Plaintiff Stephanie Trambley submitted her Notice of Loss to FEMA on April 1, 2024, and Proof of Loss ("POL") to FEMA on September 13, 2024. FEMA issued her an untimely

Final Comprehensive Letter of Determination on January 7, 2026 (well past the 180-day statutory deadline), which she appealed on April 27, 2026. Her appeal includes non-economic damages, and due to its mixed-stay policy, FEMA has stayed her *entire* claim, including the urgent economic need to stabilize her collapsing land. Due to post-fire erosion, her 118-acre property is actively collapsing into deep sinkholes. Two of her calves have drowned in these sinkholes. On April 25, 2026, Plaintiff Trambley fell into a sinkhole on her property, presenting an active, life-threatening crisis that renders further administrative delays legally futile. (Doc. 4, Ex. A).

5.      Plaintiff Elizabeth Montoya submitted Notices of Loss to FEMA on June 15, 2023, and March 12, 2025. FEMA issued Final Letters of Determination in August 2025, which Plaintiff appealed in November 2025. On February 17, 2026, Plaintiff submitted supplemental documents including a declaration regarding non-economic damages. Consequently, her claim is now trapped in FEMA's mixed-claim stay, and FEMA denied her arbitration request on March 4, 2026. Plaintiff Montoya's home is contaminated with widespread basidiospores (mold), forcing her to close off rooms and threatening her and her grandchildren's health. Furthermore, her home's foundation is deteriorating and her access roads are actively failing. Severe thunderstorms are forecasted for her area in the impending monsoon season, threatening to wash her home off its foundation and trap her in a toxic environment. (Doc. 4, Ex. D).

6.      Plaintiff Patrick Griego faces imminent and increasingly severe permanent loss due to FEMA's refusal to release compensatory funds. Government representatives informed him that HPCCFAA funds are projected to be exhausted by July 2026. (Doc. 4, Ex. B).

7.      Plaintiff UWC submitted its NOL on February 6, 2023. While FEMA issued a partial Letter of Determination for flood insurance premiums on May 31, 2024, and a partial

determination solely for reforestation and revegetation claims on October 16, 2024, FEMA has failed to issue a final LOD resolving UWC's core claims (POL 03181). UWC sought an emergency line of credit, which was denied on April 9, 2026. Consequently, UWC has been unable to secure a line of credit to pay employees, continue operations, and perform critical repairs. UWC is being forced to defer approximately $400,000.00 in critical repairs to pavement and asphalt, and defer the critical relocation of facilities buildings situated in an increased flood risk area. Consequently, UWC faces severe safety-threatening hazards during the impending monsoon season.

8.    PVCA submitted its NOL on July 28, 2023. PVCA subsequently submitted four Proofs of Loss (POL 1 on 11/10/23; POL 2 on 1/17/24; POL 3 on 3/22/24; and POL 4 on 1/27/26). 180 days have not yet passed since the submission of POL 4. PVCA faces an active, progressive landslide involving approximately 380,896 cubic feet of soil. Engineering and geological reports confirm this landslide poses an imminent danger to occupied homes along Pascual Road, prompting recommendations for immediate utility shutoffs. Furthermore, PVCA's critical water and electrical infrastructure remain severely damaged. FEMA has failed to conduct timely site inspections, refused to rely on Pendaries' expert reports, and failed to issue a final LOD.

9.    On May 12, 2026, eleven "Arbitration-Stayed Plaintiffs" served formal demands on FEMA to sever their economic damages and issue Partial Final Agency Determinations. (*See* Doc. 4 Exs. G-Q). FEMA has not responded to these demands.

## II.    CONCLUSIONS OF LAW

10.    Because the requested relief alters the status quo and compels agency action, it constitutes a mandatory preliminary injunction. The Court finds the Plaintiffs have met the heightened burden for such relief by making a strong showing that they are substantially likely to

succeed on the merits, that they will suffer irreparable injury, that the threatened injury outweighs potential damage to FEMA, and that the injunction is not adverse to the public interest. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019); Fed. R. Civ. P. 65.

11.     While economic loss is generally not considered irreparable, the harm here is legally irreparable because the Hermit's Peak/Calf Canyon Act's waiver of sovereign immunity expressly prohibits the recovery of interest. See 44 C.F.R. § 296.21(b). Plaintiffs cannot recover damages for the time-value of FEMA's delay. Furthermore, UWC and PVCA face severe safety hazards and institutional threats that cannot be remedied by delayed monetary compensation.

12.     The Hermit's Peak Act mandates the "expeditious consideration and settlement of claims." HPCCFAA § 102(b)(2). Staying the arbitration of economic claims while non-economic damages are appealed is contrary to this mandate. Claimants are entitled to sever their economic claims and proceed to *de novo* arbitration.

13.     The Court notes that whether the expiration of the 180-day statutory period automatically reopens a claim for arbitration as a matter of statutory interpretation under HPCCFAA § 104(h)(3) is an open question of law currently pending before this Court in *Arellano v. FEMA*, No. 1:26-cv-00221-KG-JFR. The Court need not, and does not, decide that broad statutory question today. Rather, the Court grants relief to the Plaintiffs based on the specific facts of their claims and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

14.     Under 5 U.S.C. § 706(1), a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed. In determining whether a delay is unreasonable, the Court

applies the TRAC factors. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999). The Court finds that FEMA's delay is legally unreasonable under these factors:

a.  TRAC Factors 1 & 2 (Rule of Reason and Congressional Timetable): Congress explicitly mandated a 180-day timetable for claim determinations under the HPCCFAA. FEMA's blanket stays and failure to issue determinations within this period violate this express congressional mandate.

b.  TRAC Factors 3 & 5 (Human Health and Welfare): Delays involving human health and welfare are less tolerable than delays involving purely economic harm. FEMA's delay directly threatens human life and safety: Plaintiff Trambley is actively falling into sinkholes; Plaintiff Montoya is trapped in a home contaminated with toxic mold; Plaintiff UWC faces severe flood risks during the impending monsoon season; and PVCA faces an active, 380,000-cubic-foot landslide threatening occupied homes.

c.  TRAC Factor 4 (Effect on Agency Priorities): Severing economic damages and referring them to arbitration does not prejudice FEMA's competing priorities; rather, it fulfills the agency's statutory mandate to expeditiously settle claims.

d.  TRAC Factor 6 (Agency Impropriety): FEMA's blanket suspension of all arbitrations following this Court's decision in *Old Wood*, alongside its implementation of an unwritten "mixed-claim stay," demonstrates agency impropriety and manufactured delay.

15.     Category A: The 180-Day Constructive Denials (Plaintiff UWC and PVCA). Because FEMA has unreasonably delayed these claims past the 180-day statutory deadline, and because this delay threatens human health and welfare, requiring further administrative exhaustion

is legally futile. Their claims are constructively denied, entitling them to bypass further administrative processes and proceed immediately to *de novo* arbitration. Regarding PVCA specifically, as established in *Gallegos v. FEMA*, No. CIV 24-0170 JB/JFR (D.N.M. July 21, 2025), the 180-day statutory clock commences upon the submission of the NOL. The Court rejects FEMA's argument that PVCA's subsequent submission of POL 4 resets this deadline, as that would contravene the Act's mandate for expeditious settlement. Because arbitration under the Act is a *de novo* proceeding, the arbitrator is not limited to the record as it existed at day 180 and may consider all evidence, including POL 4 and cascading events submitted up to the point of arbitration.

16.     Category B: The Unlawful Mixed-Claim Stays (Plaintiffs Trambley, Montoya, and Griego). FEMA's policy of staying the arbitration of economic claims while non-economic claims are appealed violates the HPCC Act. These Plaintiffs are entitled to sever their economic claims, hold the non-economic claims in abeyance, and proceed immediately to *de novo* arbitration.

17.     Category C: The Arbitration-Stayed Plaintiffs. FEMA's failure to respond to the May 12, 2026, formal severance demands constitutes a constructive denial under 5 U.S.C. § 706(1), ripening their claims for immediate, *de novo* arbitration.

18.     Wavier of Security Bond: Federal Rule of Civil Procedure 65(c) generally requires a movant to give security. However, the Tenth Circuit has held that trial courts have "wide discretion under Rule 65(c) in determining whether to require security," and may entirely decline to require a security bond. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009). The Court has broad discretion to waive the bond requirement, particularly in cases involving the enforcement of public rights or where the plaintiffs lack financial resources. Because Plaintiffs,

and PVCA, are suffering severe, ongoing economic hardship and property destruction, and because this action seeks to compel the government to comply with its statutory duties, the Court exercises its discretion to waive the Rule 65(c) security bond requirement and sets the bond amount at zero.

19.     Scope of Relief: The relief granted herein is based on the individualized irreparable harm of the named Plaintiffs, and PVCA, and the Court's authority under the APA, 5 U.S.C. § 706, to set aside and enjoin unlawful agency policies and compel agency action unlawfully withheld.

IT IS ORDERED that:

(i) The Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is GRANTED. To prevent the expiration of relief prior to the completion of the arbitrations ordered herein, this Order shall operate as a Preliminary Injunction, remaining in full force and effect until a final judgment is entered in this matter or until further order of the Court.

(ii) Defendant FEMA is enjoined from enforcing a policy that stays the processing or arbitration of economic claims due to pending appeals on non-economic claims. FEMA shall resume processing the economic portions of claims and referring disputed claims to *de novo* arbitration.

(iii) Defendant FEMA is enjoined from asserting administrative exhaustion as a defense to arbitration, or refusing to refer a claim to arbitration, under any of the following circumstances:

  e.  Where the claimant has faced unreasonable delay, which the Court defines objectively as the expiration of 180 days since the submission of the Notice of Loss without a final determination from FEMA; or

f.  Where the claimant has a claim containing both economic and non-economic damages, in which case FEMA shall sever the non-economic damages, hold them in abeyance, and refer the economic portion to *de novo* arbitration; or

g.  Where the claimant submitted a formal demand for severance, partial determination, or arbitration to which FEMA failed to respond, which the Court deems a constructive denial under 5 U.S.C. § 706(1).

(iv) All arbitrations conducted pursuant to this Order shall be conducted *de novo*. Arbitrators shall consider all evidence, supplemental information, and cascading events up to the point of arbitration, without restriction to the administrative record.

(v) Category A (180-Day Constructive Denials): Regarding Plaintiff Armand Hammer United World College–USA (UWC) and PVCA, FEMA's unreasonable delay renders further exhaustion futile. FEMA shall immediately refer their claims to *de novo* arbitration. For PVCA, the arbitrator shall consider all supplemental Proofs of Loss, inclusive of POL 1, POL 2, POL 3, and POL 4.

(vi) Category B (Mixed-Claim Stays): Regarding Plaintiffs Stephanie Trambley, Elizabeth Montoya, and Patrick Griego, FEMA shall immediately refer the economic portions of their claims to de novo arbitration, severing the non-economic damages currently on appeal.

(vii) Category C (Arbitration-Stayed Plaintiffs): FEMA's non-response to the eleven Arbitration-Stayed Plaintiffs' May12, 2026, demands is deemed a constructive denial. These claimants may initiate *de novo* arbitration for their economic damages immediately.

(viii) Regarding Arbitration: Within five (5) days of the entry of this Order, the parties shall confer to select a mutually agreeable arbitrator or arbitration service to conduct the arbitrations

ordered herein.  If the parties are unable to agree within ten (10) days of the entry of this Order, each party shall submit the names of three (3) proposed arbitrators to the Court. The Court will then appoint an arbitrator for the respective claims. The arbitrations shall proceed *de novo*, and the appointed arbitrator shall establish the governing procedures until further order of the Court.

_____
UNITED STATES DISTRICT COURT JUDGE

*/s/Francheska Bardacke*      
Antonia Roybal-Mack
Francheska Bardacke
ROYBAL-MACK & CORDOVA, P.C.

Ian Cloud
Robins Cloud, LLP

*Attorneys for Plaintiffs*