**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

STEPHANIE TRAMBLEY, PATRICK
GRIEGO, ELIZABETH MONTOYA, THE
ESTATE OF JOSE H. MONTOYA, UNITED
WORLD COLLEGES-USA, and THE
ARBITRATION-STAYED PLAINTIFFS, on
behalf of themselves and all others similarly
situated,

        Plaintiffs/Petitioners,

vs.                                                                                     No. CIV 26-1824 JB/JFR

FEDERAL   EMERGENCY   MANAGEMENT
AGENCY,

        Defendant/Respondent.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Emergency Motion for Temporary Restraining Order (With Truncated Notice) and Preliminary Injunction, filed June 5, 2026 (Doc. 2)("TRO"). The Court holds a hearing on June 15, 2026. See Clerk's Minutes at 1, filed June 15, 2026 (Doc. 12). The primary issues are: (i) whether the Plaintiffs have Article III standing to bring this action; (ii) whether the Plaintiffs are likely to succeed on the merits in demonstrating that the Court should compel Defendant Federal Emergency Management Agency ("FEMA") to continue processing claims with both economic and non-economic damages (mixed claims) under 5 U.S.C. § 706(1); (iii) whether the Plaintiffs are likely to succeed on the merits in demonstrating that the Court should vacate FEMA's policy of staying mixed claims as arbitrary and capricious under 5 U.S.C. § 706(2); (iv) whether the Plaintiffs are likely to succeed on the merits in demonstrating that the Court should invoke 5 U.S.C. § 706(1) to compel FEMA to send unresolved claims to arbitration and conduct the de novo review that Old Wood, LLC v. Fed. Emergency Mgmt.

Agency, No. CIV 24-1142 JB/JFR, 2026 WL 1078698 (D.N.M. April 21, 2026)("Old Wood") requires; and (v) whether the Plaintiffs satisfy the remaining elements of a TRO: irreparable harm, and balance of equities. The Court concludes: (i) Plaintiffs Stephanie Trambley, Elizabeth Montoya, United World Colleges ("United World"), and Pendaries Village Community Association ("Pendaries Village") have Article III standing to bring this action, but Plaintiffs Patrick Griego and the Arbitration-Stayed Plaintiffs do not; (ii) the Plaintiffs are likely to succeed on the merits in demonstrating that the Court should compel FEMA to continue processing claims with both economic and non-economic damages under 5 U.S.C. § 706(1); (iii) the Plaintiffs are not likely to succeed on the merits in demonstrating that the Court should vacate FEMA's policy of staying mixed claims as arbitrary and capricious under 5 U.S.C. § 706(2); (iv) the Plaintiffs are likely to succeed on the merits in demonstrating that the Court should invoke 5 U.S.C. § 706(1) to compel FEMA to send unresolved claims to arbitration and conduct the de novo review required by Old Wood; and (v) the Plaintiffs make the requisite showing on the balance of equities, but only United World can demonstrate irreparable harm. The Court accordingly grants the TRO only as to United World.

**FACTUAL/PROCEDURAL BACKGROUND**

First, the Court describes the Hermit's Peak/Calf Canyon Fire and the creation of the Hermit's Peak Act. Second, the Court briefly discusses the Court's Memorandum Opinion and Order in two related FEMA cases: Lands v. FEMA, No. CIV 23-0869 JB/JFR (D.N.M.), and Dolan v. FEMA, No. CIV 23-0908 JB/JFR (D.N.M.)("Dolan"), see Dolan v. FEMA, 760 F. Supp. 3d 1200, 1200 (D.N.M. 2024)(Browning, J.)("Lands and Dolan"), before discussing how Lands and Dolan relates to FEMA's mixed claim stay policy. Finally, the Court briefly discusses the Court's opinion in Old Wood and describes FEMA's arbitration stay policy.

- 2 -

1.      <u>**Overview of the Hermit's Peak/Calf Canyon Fire and the Hermit's Peak Act**</u>.

The Hermit's Peak/Calf Canyon Fire began in northeastern New Mexico on April, 2022, when the United States Forest Service ("Forest Service") initiated a prescribed burn in the Santa Fe National Forest in San Miguel County that quickly spread beyond federal land and turned into a wildfire.  See <u>Dolan v. FEMA</u>, 760 F. Supp. 3d 1200, 1208-09 (D.N.M. 2024)(Browning, J.)(citing Hermit's Peak Act § 102(a) Findings and Purposes, 136 Stat. 2144, 2168 ("Hermit's Peak Act § 102(a)")).  A second wildfire also began nearby on April 19, 2022, when a dormant pile burn[1] from the prior winter reemerged.  See <u>Dolan v. FEMA</u>, 760 F. Supp. 3d at 1209 (citing Hermit's Peak Act § 102(a)).  The two wildfires merged and scorched 340,000 acres of land in northeastern New Mexico, destroying over 900 structures and forcing over 15,000 households to evacuate.  See <u>Dolan v. FEMA</u>, 760 F. Supp. 3d at 1208 (citing Hermit's Peak Act § 102(a)). In September, 2022, Congress establishes a dedicated relief fund to compensate Hermit's Peak/Calf Canyon Fire victims by enacting the Hermit's Peak Act, § 102(b), 136 Stat. at 2169 ("§ 102(b)").  The Hermit's Peak Act provides funding to compensate persons whom the fire injures, and establishes within FEMA an Office of Hermit's Peak/Calf Canyon Fire Claims, which Congress vests with the authority to "receive, process, and pay claims in accordance with this Act."  § 104(a)(2)(A), (B).  The Hermit's Peak Act requires FEMA's Administrator to publish in the Federal Register interim final regulations for the processing and payment of claims within forty five days of the date of enactment of the Hermit Peak's Act.  See §§ 103(1)(A), 104(f)(1).

2.      **Lands <u>and</u> Dolan <u>and FEMA's Mixed Claim Stay Policy</u>.**

---

[1] A pile burn "is a type of prescribed fire where firefighters pile and burn forest debris to reduce an area's wildfire risk." Pile Burning, United States Forest Service, https://www.fs.usda. gov/detail/arp/landmanagement/resourcemanagement/?cid=fsm91_058291 (last accessed Dec. 6, 2024).

On December 17, 2024, the Court issues a Memorandum Opinion and Order in two related FEMA cases: Lands v. FEMA, No. CIV 23-0869 JB/JFR (D.N.M.)("Lands"), and Dolan v. FEMA, No. CIV 23-0908 JB/JFR (D.N.M.)("Dolan"). Dolan v. FEMA, 760 F. Supp. 3d 1200, 1200 (D.N.M. 2024)(Browning, J.)("Lands and Dolan"). In Lands and Dolan, the Court holds that: (i) the Hermit's Peak Act allows victims to recover noneconomic damages; and (ii) FEMA's refusal to award noneconomic damages violates the APA. See Lands and Dolan, 760 F. Supp. 3d at 1208. To support these conclusions, the Court determines that: (i) the provision which limits damages to "actual compensatory damages," § 104(c)(3)(A), includes noneconomic damages; and (ii) the provision which lists "allowable damages," § 104(d)(4), is a non-exhaustive list of recoverable losses. See Lands and Dolan, 760 F. Supp. 3d at 1252-65. As a remedy, the Court: (i) holds unlawful and sets aside FEMA's regulations that preclude recovery of noneconomic damages; and (ii) compels FEMA to award noneconomic damages for the plaintiffs' Hermit's Peak Act claims. See Lands and Dolan, 760 F. Supp. 3d at 1265-66.

Relevant to this case, after the Court issues its opinion in Lands and Dolan, FEMA sends out a letter titled "Appeal Status Update -- Judicial Review" to at least some Hermit's Peak Act claimants, which states in relevant part:

> A ruling by the United States District Court for the District of New Mexico (Court) is currently affecting appeals like yours. On December 31, 2024, the Court ordered the Federal Emergency Management Agency (FEMA) to award noneconomic damages and invalidated a portion of FEMA's Hermit's Peak/Calf Canyon Fire Assistance Regulation (44 C.F.R. § 296.21). FEMA has since filed a motion requesting the Court to reconsider its ruling on noneconomic damages and other issues.
>
> Until the Court makes a final decision, we are unable to issue a final determination on your appeal. We will notify you once there are updates.

Letter from Appeals Section, Hermit's Peak/Calf Canyon Claims Office at 1 (dated May 11, 2026), filed June 5, 2026 (Doc. 1)("Letter from Appeals Section").

**3.      Old Wood and FEMA's Arbitration Stay Policy.**

In Old Wood, relevant here, the Court holds that: (i) the Court vacates under 5 U.S.C. §

706(2) FEMA's regulations and policies relating to arbitration under the Hermit's Peak Act that:

(a) restrict arbitration to a review of the record of any issues the parties raise and FEMA decides on

administrative appeal, and (b) limit arbitration to a search for substantial evidence supporting

FEMA's decision on administrative appeal; and (ii) after concluding that Old Wood's challenge to

FEMA's requirement that a claimant exhaust an administrative appeal before proceeding to

arbitration on a disputed claim is moot, the Court discusses how this regulation is also invalid under

the APA.  See Old Wood, 2026 WL 1078698 at * 1, 21-22.  In response to Old Wood, FEMA sends

out a letter titled "Important Notice: Temporary Stay of Arbitration Proceedings" to at least some

claimants, which states in relevant part:

> The United States District Court of New Mexico in Old Wood v. FEMA, et al., No. 1:24-cv-01142-JB-JFR, ruled that some aspects of the Hermit's Peak/Calf Canyon Claims Office (Claims Office) arbitration process are contrary to law and partially invalidated certain arbitration regulations and policies under the Hermit's Peak/Calf Canyon Fire Assistance Act.  As a result, the Claims Office is suspending arbitration proceedings until further notice as we evaluate our legal and administrative options to implement and/or otherwise respond to this ruling.  The Hermit's Peak/Calf Canyon Claims Office Arbitration Unit (Arbitration Unit) is committed to providing arbitration to claimants seeking review of Claims Office decisions and expects to re-initiate arbitration in a timely manner subject to legal and administrative requirements.
>
> If you are currently in communication with JAMS in connection with a request for arbitration, those proceedings will be held in abeyance until further notice. Additionally, if your arbitration hearing has already been scheduled with JAMS, it is now suspended pending further guidance.

Letter from Arbitration Unit, Hermit's Peak/Calf Canyon Claims Office to Cloud 9 Trails, LLC

(dated May 5, 2026), filed June 5, 2026 (Doc. 1)("Letter from Arbitration Unit").

## ANALYSIS

To obtain a temporary restraining order or preliminary injunction under rule 65 of the

Federal Rules of Civil Procedure, the moving party must demonstrate four items: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in the movant's favor; and (4) that the injunction is in the public interest." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009)(citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  In considering the balance of equities, "[t]he third and fourth factors 'merge' when, like here, the government is the opposing party."  Aposhian v. Barr, 958 F.3d 969, 978 (10th Cir. 2020)(quoting Nken v. Holder, 556 U.S. 418, 435 (2009))(overruled in part on other grounds).  Certain preliminary injunctions are disfavored: "(1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win."  Free the Nipple-Fort Collins v. City of Fort Collins, Colo., 916 F.3d 792, 797 (10th Cir. 2019).  "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harm factors: She must make a 'strong showing' that these tilt in her favor."  Free the Nipple-Fort Collins v. City of Fort Collins, Colo., 916 F.3d at 797 (quoting Fish v. Kobach, 840 F.3d 710, 724 (10th Cir. 2016)).

FEMA argues that the injunction which the Plaintiffs seek qualifies as a disfavored injunction, arguing that all three characteristics of a disfavored injunction exist here, because, "[b]y requesting that the Court set aside FEMA's Mixed Claim Policy and compel arbitration of their claims, Plaintiffs seek a remedy that would mandate action, alter the status quo, and grant the ultimate relief Plaintiffs seek in this action."  FEMA's Response in Opposition to Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction at 6-7, filed June 13, 2026 (Doc. 10)("Response").  The Court agrees with FEMA that the injunction which the Plaintiffs seek is disfavored, because the Plaintiffs seek to mandate action, forcing FEMA to bring

cases to arbitration, and alter the status quo by mandating that FEMA change how it processes claims.  Further, the Plaintiffs seek all the substantive relief, apart from fees and costs, that the Plaintiffs could receive at trial.  The Court therefore concludes that the Plaintiffs are subject to a higher burden on the likelihood-of-success-on-the-merits and the balance-of-harm factors.  The Court nevertheless determines that the Plaintiffs are able to meet this higher burden, and make a strong showing on the likelihood-of-success-on-the-merits and the balance-of-harm factors for both the mixed-claim stay and for the arbitration stay.

I.    **TRAMBLEY, MONTOYA, UNITED WORLD, AND PENDARIES VILLAGE HAVE ARTICLE III STANDING TO BRING THIS ACTION, BUT GRIEGO AND THE ARBITRATION-STAYED PLAINTIFFS DO NOT HAVE STANDING.**

Before the Court may reach the merits, the Court must determine whether the Plaintiffs satisfy Article III to the Constitution standing requirements.  FEMA argues that the Plaintiffs cannot satisfy Article III's standing requirements.  See Response at 9.  Article III standing requires: (i) an injury-in-fact; (ii) a causal relationship between the injury and the challenged conduct; and (iii) a likelihood that the court can redress the injury.  See Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008).

The Court concludes that the following Plaintiffs demonstrate the necessary injury-in-fact: Trambley, Montoya, United World, and Pendaries Village.[2]  See Hutchinson v. Pfeil, 211 F.3d 515, 521 (10th Cir. 2001)(explaining that an injury-in-fact is "'a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical'")(quoting Steel Co. v. Citizens

_____

[2] The Court notes that Pendaries Village is not a named Plaintiff in this case and that the Plaintiffs seek to amend the Complaint to add Pendaries Village as a Plaintiff after they file the motion for TRO.  See Second Amended Verified Complaint for Declaratory and Injunctive Relief, filed June 30, 2026 (Doc. 29)("Second Amended Complaint"). In the Second Amended Complaint, the Plaintiffs indicate that "FEMA consents to Plaintiffs' filing of the Second Amended Complaint."  Second Amended Complaint ¶ 1, at 1.  Accordingly, the Court addresses Pendaries Village's claims in this Memorandum Opinion and Order.

for a Better Env't, 523 U.S. 83, 103 (1998)).    First, Trambley alleges that her property "was severely damaged by the Hermit's Peak/Calf Canyon Fire of 2022, which destroyed the vegetation and root systems, leading to severe slope instability and catastrophic flooding."  Declaration of Stephanie C. Trambley ¶ 3, at 1 (dated May 20, 2026), filed June 6, 2026 (Doc. 4)("Trambley Decl."). Trambley alleges that "[f]ollowing the total washout of my dam and spillway last August, the uncontrolled floodwaters have completely destabilized the land" and that the recent flooding has led to deep sinkholes on the property.  Trambley Decl. ¶ 5-6, at 1.  The most recent sinkhole appears on April 25, 2026, when Trambley falls into a sinkhole on her property.  See Trambley Decl. ¶ 8, at 2.  Considering that sinkholes recently appear on the property, in the absence of efforts to stabilize the land, the Court determines that the risk of imminent harm in the form of future sinkholes or other further degradation of the land is real and not speculative such that Trambley demonstrates an injury-in-fact.  Montoya alleges that:

> With each thunderstorm/rain fall the soil stability on my property and properties surrounding me fail and debris and mud flow renders my access road impassable.  Because my home is currently contaminated with widespread mold (basidiospores), I cannot safely shelter in place, and if the road washes out this week, my grandchildren and I will be trapped in a toxic environment with no ability for emergency vehicles to reach us and no safe route to evacuate.

Declaration of Elizabeth K. Montoya In Support of Motion for Emergency Injunctive Relief (Irreparable Harm) ¶ 7, at 2 (dated June 3, 2026), filed June 6, 2026 (Doc. 4)("Montoya Decl."). The Court concludes that Montoya demonstrates an ongoing actual harm in the form of mold contamination, and that the risk of the inability to access a road or lack of soil stability on Montoya's property because of rainfall is a sufficiently imminent harm so as to qualify as an injury-in-fact. Third, United World alleges that it must defer repairs to "pavement and asphalt that were severely damaged" by the Hermit's Peak Act Fire which has resulted in "ever-worsening trip hazards," and subsequent flooding and relocation of buildings situated in an "increased flood risk area," as well

as financial instability from repairing fire damage, and reputational harm.  Declaration of Armand Hammer United World College, C/O Kimi Jackson In Support of Motion for Emergency Injunctive Relief ¶¶ 5-10, 19, at 1-2, 4 (dated June 3, 2026), filed June 6, 2026 (Doc. 4)("United World Decl."). The Court concludes that United World alleges an imminent, non-speculative injury in the form of continued financial issues, reputational harm, and "ever-worsening trip hazards" around its campus. Finally, Pendaries Village asserts that "[t]he physical condition of PVCA's property is rapidly deteriorating.  The land suffers from severe, progressive erosion, siltation, and damage to culverts and roads."   Declaration of Deborah Simpson on Behalf of Pendaries Village Community Association in Support of Motion for Emergency Injunctive Relief ¶ 11, at 3 (dated June 10, 2026), filed June 10, 2026 (Doc. 7)("Pendaries Village Decl.").   Pendaries Village states that both Engineering Analytics, Inc., and the NRCS-Geological Service Unit perform site visits after the fire, and acknowledge the risk of landslides following damage from the fire.  See Pendaries Village Decl. ¶ 12-14, at 3-4.  Further, Pendaries Village mentions that Engineering Analytics "recommends safety measures including utility shutoff, surface water containment, and further geotechnical evaluation.   These findings have given rise to a well-founded apprehension of imminent and impending harm from a landslide; however, Pendaries Village lacks the financial resources necessary to undertake the required evaluations and remediation measures to prevent further land movement."  Pendaries Village Decl. ¶ 13, at 3-4.  Although the latest site visit is in the summer of 2025, the Court concludes that the ongoing risk of an imminent landslide, paired with the actual damage that has already occurred to Pendaries Village's land, is sufficient to allege an injury-in-fact for standing purposes of this Memorandum Opinion and Order.  Accordingly, the Court concludes that Trambley, Montoya, United World, and Pendaries Village allege injuries-in-fact.

Two Plaintiffs in the case, however, do not allege a sufficiently imminent injury-in-fact so

as to be able to seek relief under a TRO framework.  The only imminent injury that Griego alleges is fund exhaustion -- that the Hermit's Peak Act funds "will likely be exhausted by July 2026." Memorandum of Law In Support of Emergency Motion for TRO and Preliminary Injunction at 5, filed June 5, 2026 (Doc. 2)("TRO Memo."). Griego does not provide evidence to the Court sufficient to establish this fact as true, stating only that the "NRCS representative advised me to push my attorneys to accept the NRCS report for compensation.  They told me that FEMA will run out of money by the end of July and we will not receive compensation for the land damage." Declaration of Patrick Griego in Support of Motion for Emergency Injunctive Relief ¶ 12, at 2 (dated May 28, 2026), filed June 6, 2026 (Doc. 4)("Griego Decl.").   In fact, FEMA directly contradicts this assertion, stating:

> I answered the question about running out of funds next month.  This is based on a hearsay statement from an employee of another federal agency, NRCS, not FEMA. You have a declaration with our response from the Director of the Claims Office identifying the amount of funds that are remaining, which is almost $1.5 billion.

Transcript of Motion for Temporary Restraining Order and Preliminary Injunction Proceedings Hearing, at 33:24-34:5, taken June 15, 2026, filed June 26, 2026 (Sydow)("Tr.").  In the absence of a dearth of available funds under the Hermit's Peak Act, Griego does not present the requisite imminent harm to maintain a TRO action.  Similarly, the eleven unnamed arbitration-stayed Plaintiffs do not allege an imminent injury-in-fact necessary to maintain a TRO action.  In fact, the TRO Memo. does not discuss the injuries which these Plaintiffs suffer at all.  Accordingly, neither Griego nor the arbitration-stayed Plaintiffs are able to receive specific relief on this TRO Motion.

Turning next to the causation and redressability requirements, the Court notes that FEMA also takes issue with both of these requirements, stating that "the various Plaintiffs advance various imminent injuries, ranging from life-threatening sinkholes to unquantifiable reputational harm and institutional collapse," but argues that "these alleged injuries are neither imminent, irreparable, due

to the Hermit's Peak/Calf Canyon Fire ('HPCC Fire' or 'Fire'), or even redressable by their requested injunctive relief." Response at 9. Article III's causation requirement requires "'something less than the concept of proximate cause,'" but does "at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Nova Health Systems v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005). The evidence needed to carry the burden of demonstrating standing depends on the stage of litigation, and at the TRO/PI stage, the plaintiff must make a clear showing that they are likely to establish each element of standing. See Murthy v. Missouri, 603 U.S. 43, 58 (2024)(citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008)). As to Trambley, FEMA asserts that "it's not clear whether damages from the HPCC Fire caused the sinkholes" and highlights that "Trambley does not rely on any expert reports to establish that these sinkholes were a result of the Fire . . . ." Response at 18. The Court concludes that, even in the absence of expert reports, that the Hermit's Peak Fire destabilizes the slope stability of Trambley's land and causes flooding to occur on her land presents a substantial likelihood that the Fire also causes these sinkholes to occur. The Court reaches this conclusion both because instability in the soil contributes to sinkholes, and because these sinkholes do not occur on Trambley's land until after the Hermit Peak's Act Fire. Accordingly, the Court determines that there is causation for Trambley's injuries. As to Montoya, FEMA argues that "there is no expert testimony or evidence presented with the Motion that the access road, erosion, mold contamination, and damage to her home is attributable to the Fire and so compensable under the HPCC Act." Response at 19. Even in the absence of expert testimony, the Court concludes that Montoya's statements alleging that the fire causes the damage both to her property and to the access road demonstrate that it is likely that the Hermit's Peak Fire causes Montoya's injuries. See Montoya Decl. ¶¶ 2, 4, at 1. The Court therefore concludes that there is causation for Montoya's injuries.

Next, United World alleges, among other injuries, structural injuries to its property, reputational harm, and financial injury from the loss of business because of the fire damage. See United World Decl. ¶ 6, 9, 10, 18, 19, at 2, 4.   FEMA does not argue that the Hermit's Peak Fire does not cause these damages, and the Court determines that there is a substantial likelihood that the fire causes United World's injuries. Accordingly, the Court determines that there is causation for United World's injuries.  Finally, Pendaries Village provides a technical memorandum that Engineering Analytics creates "finding land movement (slide) attributable to drainage carrying greater water volume than pre-fire conditions, combined with rain and snowmelt infiltrating soils that have lost vegetative support due to the fire." Pendaries Village Decl. ¶ 12, at 3 (citing Engineering Analytics Technical Memorandum at 1, 2 (dated April 1, 2025), filed June 10, 2026 (Doc 7)).  The Court concludes that this report demonstrates a substantial likelihood that the Hermit's Peak Fire is responsible for the current damage to the land which contributes to the likelihood of landslides.  As a result, the Court determines that there is causation for United World's injuries.

Finally, redressability requires "a likelihood that the requested relief will redress the alleged injury."  Hutchinson v. Pfeil, 211 F.3d at 521.  All of the Plaintiffs' injuries stem from the fact that FEMA has not paid out yet on their Hermit's Peak Act claims.  And although the Plaintiffs seek many different forms of relief, the essence of what the Plaintiffs seek in this TRO Motion is for the Court to require FEMA to allow their cases under the Hermit's Peak Act to continue to move forward and to allow the Plaintiffs to go to arbitration on their claims.  FEMA asserts that this relief cannot redress the Plaintiffs' injuries, because there is no guarantee that granting the relief which the Plaintiffs seek, allowing the claims to move forward, "would [] have the immediate effect of remedying Petitioners' alleged injuries."  Response at 17.  In the United States Court of Appeals for the Tenth Circuit, however, redressability does not require complete redressability.  See

Consumer Data Industry Ass'n v. King, 678 F.3d 898, 902 (10th Cir. 2012)(citing Massachusetts

v. EPA, 549 U.S. 497, 526 (2007), and explaining that redressability is present, because "the risk

of harm 'would be reduced to some extent if petitioners received the relief they seek.'")(emphasis

in Consumer Data Industry Ass'n v. King, but not in Massachusetts v. EPA).  A contributing factor

to the Plaintiffs' injuries is the delay in payout; it has been over four years since the Hermit's

Peak/Calf Canyon fire occurred.  Removing the barriers which FEMA implements, and allowing

the Plaintiffs' claims to move forward to arbitration, will contribute to reducing the harm which the

Plaintiffs are currently suffering from the Hermit's Peak/Calf Canyon Fire, because it will allow

the Plaintiffs to receive compensation sooner than if the Court does not grant relief.  Accordingly,

because there is a likelihood that the risk of harm will be reduced to "some extent" by relief in this

case, the Court concludes that the Plaintiffs' injuries are redressable. The Court therefore

determines that the following Plaintiffs -- Trambley, Montoya, United World, and Pendaries Village

-- have Article III standing in this case.

## II.    THE PLAINTIFFS DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS AS TO BOTH THE MIXED-CLAIM STAY AND THE ARBITRATION STAY.

The Plaintiffs' request for relief stems from challenges to two of FEMA's policies: FEMA's

mixed-claim stay policy and FEMA's arbitration stay policy.  See TRO at 2-3 ("Plaintiffs request

an immediate Order under 5 U.S.C. § 705 and Rule 65 enjoining Defendants from enforcing the

mixed-claim stay policy against Plaintiffs and all similarly situated claimants, compelling FEMA

to sever the economic damages and issue Partial Final Agency Determinations.").

> The primary issues are: (i) whether the Court should enjoin Defendant Federal Emergency Management Agency's (FEMA) policy of staying the processing and arbitration of economic damages when a claimant's non-economic damages are pending on administrative appeal ("mixed-claim stay"); (ii) whether Plaintiff UWC and PVCA may proceed to de novo arbitration because FEMA's failure to issue a final agency determination within 180 days of their Notices of Loss

("NOL") constitutes unreasonable delay under the TRAC factors,[3] rendering administrative exhaustion futile, and whether PVCA may arbitrate all claims inclusive of Proof of Loss 4; (iii) whether Plaintiffs Trambley, Montoya, and Griego may sever their economic claims from their appealed non-economic claims to bypass the mixed-claim stay; and (iv) whether FEMA's failure to respond to formal severance and arbitration demands submitted by eleven "Arbitration-Stayed Plaintiffs" and refusal to issue Final Letters of Determination to PVCA and UWC constitutes agency action unlawfully withheld.

[Proposed] Order on Plaintiffs' Emergency Motion for Temporary Restraining Order at 3, filed June 23, 2026 (Doc. 17)("Proposed Order").  For the Plaintiffs to obtain a TRO, therefore, the Plaintiffs must demonstrate successfully a likelihood of success for their challenges to both of these policies under 5 U.S.C. § 706 of the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706 ("APA").  Looking first at the mixed-claim stay policy, the Court determines that the Plaintiffs can demonstrate a likelihood of success in proving that the Court should compel FEMA to abandon its mixed-claim stay policy and compel FEMA to move forward with the processing of claims under APA § 706(1), but cannot demonstrate a likelihood of success in proving that the Court should vacate FEMA's mixed-claim stay policy under APA § 706(2).  Then, looking at the arbitration stay

---

[3] Courts may use the factors from Telecommunications Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70 (D.C. Cir. 1984)("TRAC") to assess claims of agency action unreasonably delayed under § 706(1) of the APA.  See Forest Guardians v. Babbitt, 174 F.3d 1178, 1191 (10th Cir. 1999)(indicating TRAC may be helpful when considering discretionary time schedules).  The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason,'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency's action is unreasonably delayed.'

TRAC, 750 F.2d at 80 (internal citations omitted).

- 14 -

policy, the Court concludes that the Plaintiffs can demonstrate a likelihood of success in proving that the Court should compel FEMA to abandon its arbitration stay policy and compel FEMA to move forward with arbitrations under APA § 706(1).

> **A.    THE PLAINTIFFS CAN DEMONSTRATE A LIKELIHOOD OF SUCCESS IN PROVING THAT THE COURT SHOULD COMPEL FEMA TO ABANDON ITS MIXED-CLAIM STAY POLICY AND COMPEL FEMA TO MOVE FORWARD WITH THE PROCESSING OF CLAIMS UNDER § 706(1) OF THE APA, BUT CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS IN PROVING THAT THE COURT SHOULD VACATE FEMA'S MIXED-CLAIM STAY POLICY UNDER § 706(2) OF THE APA.**

After the Court issues its opinion in Lands/Dolan, which concludes that noneconomic damages are available under the Hermit's Peak Act, a ruling which FEMA challenges, FEMA sends out letters to at least some claimants under the Hermit's Peak Act which asserts that FEMA is unable to issue a final determination on a claimant's administrative appeal until the "Court makes a final decision" on FEMA's challenge to the noneconomic damages ruling.  Letter from Appeals Section at 1.  Notably, the Plaintiffs do not limit their objection to FEMA's announced written policy, which pertains only to administrative appeals in judicial review cases, see Letter from Appeals Section at 1, but also to an alleged "unwritten" policy of staying all mixed-claim cases in arbitrations as well, see Verified Complaint for Declaratory and Injunctive Relief ¶ 2, at 1 filed June 5, 2026 (Doc. 1)("Complaint")("Following this Court's ruling striking down FEMA's restrictive arbitration rules, FEMA retaliated by indefinitely suspending all arbitrations and implementing an unwritten 'mixed-claim stay.'");  Proposed Order at 8 ("FEMA's blanket suspension of all arbitrations following this Court's decision in Old Wood, alongside its implementation of an unwritten 'mixed-claim stay,' demonstrates agency impropriety and manufactured delay.").

The Plaintiffs assert that FEMA's "actions in preventing fair and timely resolution of the HPCC fire victims' claims are undeniably arbitrary, capricious and in violation of the APA."  TRO

Memo. at 2. The Plaintiffs also argue that FEMA's stay constitutes constructive exhaustion, because by "indefinitely freezing the administrative process, FEMA has caused a complete administrative breakdown . . . . [which] constitutes a constructive final determination, exhausting Plaintiffs' administrative remedies and vesting this Court with jurisdiction." TRO Memo. at 3. Finally, the Plaintiffs highlight that the relevant exhaustion requirement under 44 C.F.R. § 296.43 is a prudential regulatory requirement, which the Court should excuse, because "FEMA has waived its right to demand exhaustion through its own obstructive conduct." TRO Memo. at 3. The Plaintiffs bring their challenge under both § 706(1) and § 706(2) of the APA. See TRO Memo. at 2.

### 1. The Plaintiffs Demonstrate Agency Action Unlawfully Withheld With Regards to a Discrete Agency Action that FEMA Must Take, and, Accordingly, the Court Grants Relief Under § 706(1) of the APA.

Section 706(1) grants a court authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In this provision, Congress carefully circumscribes a court's ability to compel agency action to situations where an agency has ignored a specific Legislative command. See Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 65 (2004)("SUWA"). The APA's use of the phrase "failure to act" means "a failure to take an agency action -- that is, a failure to take one of the agency actions (including their equivalents) earlier defined," i.e., an "agency rule, order, license, sanction, or relief." SUWA, 542 U.S. at 62-63. Thus, a § 706(1) claim "can only proceed where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." SUWA, 542 U.S. at 64. The discrete agency action limitation precludes a "broad programmatic attack" against an agency. SUWA, 542 U.S. at 64. As such, it "protect[s] agencies from undue judicial interference with their lawful discretion" and "avoid[s] entanglement in abstract policy disagreements which courts lack both expertise and

information to resolve." SUWA, 542 U.S. at 66-67. Thus, a plaintiff "'cannot seek wholesale improvements of [a] program by court decree'" under the guise of a § 706(1) claim. SUWA, 542 U.S. at 64 (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990)). The "limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law." SUWA, 542 U.S. at 65. Thus, a plaintiff seeking relief under § 706(1) must identify an actual legal obligation for the agency to take some action.

The Plaintiffs first make broad assertions that the Hermit's Peak Act mandates "expeditious" settlement, which is not a discrete agency action which FEMA must take, and, accordingly, the Plaintiffs cannot bring a claim under § 706(1) to compel agency action on this basis. TRO Memo. at 2 (citing and quoting HPA § 102(b)(2)); Proposed Order at 7 ("The Hermit's Peak Act mandates the 'expeditious consideration and settlement of claims.' HPCCFAA § 102(b)(2). Staying the arbitration of economic claims while non-economic damages are appealed is contrary to this mandate."). The requirement of expeditious settlement does not identify any discrete agency action which FEMA must take; instead, the Plaintiffs present the "broad programmatic attack" against the way that FEMA is handling the resolution of claims under the Hermit's Peak Act which the Supreme Court of the United States expressly prohibits. Instead of identifying a discrete rule or regulation which FEMA is not following, the Plaintiffs point to the purpose of the Hermit's Peak Act -- expeditious settlement of claims -- and argue that the procedures which FEMA has put in place do not align with the purpose of the Hermit's Peak Act. The purpose of the Hermit's Peak Act, however, does not identify any discrete, enforceable obligations, and, in the absence of such identification, the Plaintiffs cannot bring a challenge to compel agency action under § 706(1). In SUWA, the Supreme Court notes:

> Section 1782(c) is mandatory as to the object to be achieved, but it leaves BLM a
> great deal of discretion in deciding how to achieve it. . . . SUWA argues that § 1782

- 17 -

> does contain a categorial imperative, namely, the command to comply with the nonimpairment mandate. It contends that a federal court could simply enter a general order compelling compliance with that mandate, without suggesting any particular manner of compliance . . . . General deficiencies in compliance, unlike the failure to issue a ruling that was discussed in Safeway Stores, [however,] lack the specificity requisite for agency action.

542 U.S. at 66 (emphasis in original). Similarly, here, the Plaintiffs present arguments of general deficiencies with compliance with the Hermit's Peak Act, which does not present a sufficiently discrete agency action that FEMA is lawfully required to take and fails to take. A plaintiff cannot seek "wholesale improvement of [a] program by court decree" under the APA, but this prohibited procedure is exactly what the Plaintiffs seek. SUWA, 542 U.S. at 64 (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990)).

The Plaintiffs also point, although vaguely, to the 180-day statutory deadline in § 104(d)(1)(A)(i), which requires that "[n]ot later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim." HPA § 104(d)(1)(A)(i). The Plaintiffs maintain that, "[b]ecause FEMA has unreasonably delayed these claims past the 180-day statutory deadline, and because this delay threatens human health and welfare, requiring further administrative exhaustion is legally futile. Their claims are constructively denied, entitling them to bypass further administrative processes and proceed immediately to de novo arbitration." Proposed Order at 8-9. The Plaintiffs expressly disclaim that they are asking the Court to decide, as a matter of statutory interpretation, whether the expiration of the 180-day statutory period in § 104(d)(1)(A)(i) automatically allows a claimant to proceed to arbitration:

> The Court notes that whether the expiration of the 180-day statutory period automatically reopens a claim for arbitration as a matter of statutory interpretation under HPCCFAA § 104(h)(3) is an open question of law currently pending before this Court in Arellano v. FEMA, No. 1:26-cv-00221-KG-JFR. The Court need not, and does not, decide that broad statutory question today. Rather, the Court grants

relief to the Plaintiffs based on the specific facts of their claims and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

Proposed Order at 7. The Plaintiffs seek to avoid this question by asking the Court to conclude only that FEMA has unreasonably delayed the claimants' cases and grant relief under § 706(1). See Proposed Order at 7-8. The Plaintiffs do not acknowledge, however, that, before the Court can examine whether FEMA unreasonably delays agency action, the Plaintiffs must identify a discrete agency action which FEMA must do. Accordingly, the Court must engage the question which the Plaintiffs disclaim: what FEMA must do within 180 days under the Hermit's Peak Act and what the absence of this action means for arbitration.

Before proceeding with any further analysis, the Court notes that the Plaintiffs must challenge the agency action under the "unlawfully withheld" portion of § 706(1) of the APA instead of agency action "unreasonably delayed" as the Plaintiffs insist, because the discrete action required of FEMA in § 104(d)(1)(A)(i) includes a concrete deadline: "Not later than 180 days after . . . the Administrator shall determine and fix the amount, if any, to be paid for the claim." HPA § 104(d)(1)(A)(i). This is because:

> if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions . . . a court must compel only action that is delayed unreasonably. Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.

Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999). The Court determines that the Plaintiffs challenge a discrete agency action which the agency must take to the extent that they allege that FEMA, through its mixed-claim stay, is failing to comply with § 104(d)(1)(A)(i) of the Hermit's Peak Act's requirement that FEMA issue a determination of claim award within 180 days. See Proposed Order at 2 ("Plaintiff UWC and PVCA may proceed to arbitration de novo because

FEMA's failure to issue a final agency determination within 180 days of their NOLs constitutes unreasonable delay under 5 U.S.C. § 706(1), rendering their claims constructively denied."). Congress has set an explicit deadline in § 104(d)(1)(A)(i) of the Hermit's Peak Act's which FEMA must follow; FEMA must "fix the amount, if any, to be paid for the claim" within 180 days that the claim is submitted.  HPA § 104(d)(1)(A)(i).  To the extent that FEMA's alleged mixed-claim stay prevents FEMA from meeting this deadline, this conduct is agency action unlawfully withheld, and the Court compels FEMA to provide determinations of claims within 180 days.  See  Forest Guardians v. Babbitt, 174 F.3d at 1190 ("The agency must act by the deadline.  If it withholds such timely action, a reviewing court must compel the action unlawfully withheld.").  As the Court holds in Old Wood, if the claimant disputes the amount that FEMA offers, a "conflict or controversy" arises concerning FEMA's offer on a claimant's claims, and the claimant may proceed to arbitration.  Old Wood, 2026 WL 1078698, at * 22.

**2.**  **The Plaintiffs Do Not Challenge a Final Agency Action, Which is Required for the Plaintiffs to Have Standing to Bring a Challenge Under § 706(2) of the APA, and, Accordingly, the Court Does Not Vacate FEMA's Alleged Mixed-Claim Stay Policy.**

Before the Court may reach the merits of the Plaintiffs' challenge to FEMA's mixed-claim stay under § 706(2) of the APA, the Court must consider whether the Plaintiffs have standing to challenge this policy.  Judicial review under the APA is only available over "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in court . . . ." 5 U.S.C. § 704.  See Kan ex rel. Schmidt v. Zinke, 861 F.3d 1024, 1028 (10th Cir. 2017).  To establish standing to sue the United States under the APA, the Plaintiffs must demonstrate: (i) a "'final agency action'"; (ii) causing concrete and particularized injury; (iii) which is redressable by the Court.  State of Utah v. Babbitt, 137 F.3d 1193, 1203 (10th Cir. 1998)("Consequently, in addition to the Article III standing requirements, Plaintiffs must also meet the statutory standing

requirements of the APA: Plaintiffs must show there has been some 'final agency action' and must 'demonstrate that [their] claims fall within the zone of interests protected by the statute forming the basis of [their] claims.")(quoting Catron County Bd. of Comm'rs v. United States Fish & Wildlife Serv., 75 F.3d 1429, 1434 (10th Cir. 1996))(brackets in State of Utah v. Babbitt, but not in Catron County Bd. of Comm'rs v. United States Fish & Wildlife Serv.).

FEMA argues that the mixed-claim stay does not constitute a "final agency action" such that Plaintiffs have standing to challenge the policy under the APA. Response at 8. "An agency action is final if: (1) it 'mark[s] the consummation of the agency's decisionmaking process' -- i.e, 'it [is] not . . . of a merely tentative or interlocutory nature'; and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" Kan ex rel. Schmidt, 861 F.3d at 1031 (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). "If an agency has issued a 'definitive statement of its position, determining the rights and obligations of the parties,' the agency's action is final notwithstanding '[t]he possibility of further proceedings in the agency' on related issues, so long as 'judicial review at the time [would not] disrupt the administrative process." Ctr. For Native Ecosystems v. Cables, 509 F.3d 1310, 1329 (10th Cir. 2007)("Cables")(quoting Bell v. New Jersey, 461 U.S. 773, 779-80 (1983)). The Supreme Court in Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)("Lujan"), makes clear that a party cannot challenge an entire agency program under the APA. See Lujan, 497 U.S. at 890 (concluding that the plaintiff's claim fails because the plaintiff does not challenge a particular final agency action; instead of limiting its challenge to a "single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations," the plaintiff challenges "the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by the FLPMA").

See also Sierra Club v. Peterson, 228 F.3d 559, 566 (5th Cir. 2000)("Peterson")(striking down an APA challenge to "past, ongoing, and future timber sales" that the Forest Service approves, for alleged failure to monitor and inventory properly in conducting these sales, because, "as in Lujan, the environmental groups have impermissibly attempted to 'demand a general judicial review of the [Forest Service's] day-to-day operations'")(quoting Lujan, 497 U.S. at 899).   An action will also not be a final agency action if it is "of a merely tentative or interlocutory nature."  Bennett v. Spear, 520 U.S. 154, 178 (1997).  See Sierra Club v. U.S. Army Corps of Eng'rs, 446 U.S. F.3d 808, 813 (8th Cir. 2006)("Sierra Club")(explaining that an agency memorandum is not a final agency action where it "merely identified sites that might justify building levees on HMGP-acquired properties . . . . The Memorandum did not obligate either agency to permit levee construction").  In Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior, 180 F.3d 1192 (10th Cir. 1999), the Tenth Circuit concludes:

> Rather than consummating any agency decisionmaking process, the letter merely asked OXY to keep its records for the audit period, requested access to all documents and information in OXY's possession relating to crude oil production and disposition for the audit period, and notified OXY that the MMS intended to initiate an audit.  At best, the letter served only to initiate further proceedings by which the MMS could determine whether Plaintiffs owed royalties.  For this reason, we agree with the district court that the letter represents a tentative or interlocutory action.

Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior, 180 F.3d at 1198.

FEMA maintains that the mixed-claim stay policy is not final, but is instead "a set of various temporary measures, implemented by FEMA in certain administrative appeals, in light of ongoing appellate review of legal issues regarding the availability of non-economic damages under the HPCC Act . . . ."  Response at 8.  FEMA argues that the mixed-claim stay policy is not agency action, and that the policy is only "a set of common, but not universal, practices being temporarily applied in some claims."  Response at 9.  Importantly, FEMA appears to respond to the Plaintiffs'

argument understanding that the Plaintiffs are challenging only FEMA's written policy of staying administrative appeals in judicial review cases for cases with noneconomic damages claims. See Response at 8 (explaining that the mixed-stay policy is "implemented by FEMA in certain administrative appeals"). With regards to the written mixed-stay policy for administrative appeals in judicial review cases, the Court disagrees with FEMA's argument that this policy is not a final agency action.[4] The Plaintiffs do not challenge, however, this written mixed-claim stay policy, but

---

[4] The Court concludes that FEMA's letter announcing that it is unable to proceed with the administrative appeal on a case which includes noneconomic damages "[u]ntil the Court makes a final decision" regarding the Land/Dolan ruling that noneconomic damages are available under the Hermit's Peak Act, Letter from Appeals Section at 1, constitutes a definitive statement of FEMA's position which determines the parties' rights and obligations of the parties sufficiently to be a final agency decision,  see Cables, 509 F.3d at 1329. The Letter from Appeals Section states that FEMA will not proceed with any further administrative appeals until the Tenth Circuit rules on its appeal regarding the issue of noneconomic damages; this action is not tentative. Unlike in Sierra Club, where the challenged agency action does not obligate the agency, here FEMA's letter states that FEMA will be ceasing any further processing of administrative appeals until the Tenth Circuit acts. To the extent that FEMA argues that the mixed-claim stay policy is merely a temporary management tool, the Court determines that the fact that there may be further modifications on this policy does not negate the fact that, at this time, the action is final. In Cables, the Tenth Circuit recognizes:

> that [challenged action] may be described as a "management tool" for the Forest Service, and events during the grazing season (such as a fire) can require further modifications to what grazing is permitted. But [challenged action] are the last word before grazing begins and undoubtedly have clear and definite consequences for permittees, who need to make their plans based on what the [challenged actions] authorize. In other words, [challenged action] "ha[ve] a direct and immediate effect on the day-to-day business" of permittees, and "immediate compliance with their terms [is] expected."

509 F.3d at 1330 (quoting F.T.C. v. Standard Oil Co. of California, 499 U.S. 232, 239-40 (1980)). Similarly, FEMA's letter has a direct and immediate effect on the day-to-day handling of claimants' claims under the Hermit's Peak Act. The Court therefore determines that this conduct is a final agency action, even despite that there might be further agency action on related issues. The letter, accordingly, meets the first prong of the final agency action test as the consummation of the agency's decision-making process. Further, from this action, immediate consequences flow for claimants under the Hermit's Peak Act, because these claimants cannot move forward with the resolution of their claims under the Hermit's Peak Act unless FEMA proceeds to process their claims. Accordingly, because FEMA's letter meets both prongs for a final agency action, the Court

instead challenge a broader alleged unwritten policy in which FEMA does not move forward any aspect of any case which includes noneconomic damages, including cases which have chosen to go the arbitration route.    See Complaint ¶ 2, at 1 ("Following this Court's ruling striking down FEMA's restrictive arbitration rules, FEMA retaliated by indefinitely suspending all arbitrations and implementing an unwritten 'mixed-claim stay.'"); TRO Memo. at 1 ("FEMA's blanket stay on mixed claims is an unlawful and wasteful scheme . . . .").    Because the Plaintiffs do not introduce any evidence sufficient to establish that FEMA even has a policy of a blanket stay for mixed-claims, the Court agrees with FEMA that this conduct is not a final agency action which the Plaintiffs have standing to challenge.    Neither the Complaint, the TRO Memo., nor the Proposed Order "refer[s] to a single . . . order or regulation" of FEMA's which constitutes or reflects an agency policy applicable to all claims under the Hermit's Peak Act.    Lujan v. Nat'l Wildlife Fed'n, 497 U.S. at 890 (rejecting the plaintiffs' challenge to the Bureau of Land Management's alleged "land withdrawal program," because there is no agency action on which to base their challenge under the APA).    See ONRC Action v. BLM, 150 F.3d 1132, 1136 (9th Cir. 1998)(rejecting the APA claims because "this case represents a situation where there is no identifiable agency order, regulation, policy or plan that may be subject to challenge as a final agency action").    To be sure, "agency action . . . need not be in writing to be final and judicially reviewable" pursuant to the APA.    R.I.L.-R v. Johnson, 80 F.Supp.3d 164, 184 (D.D.C. 2015)("R.I.L.-R").    A contrary rule "would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing."    Grand Canyon Tr. v. Pub. Serv. Co. of N.M., 283 F.Supp.2d 1249, 1252 (D.N.M. 2003)(Black, J.).

---

concludes that the letter constitutes a final agency action.

Even if unwritten, however, the Plaintiffs alleging the existence of a policy must provide sufficient evidence that such policy actually exists.  For example, in R.I.L.-R, the plaintiffs challenge an alleged DHS detention policy affecting Central American mothers accompanied by minor children.  See 80 F. Supp. 3d at 174.  The court determines that the plaintiffs show the existence of a "DHS policy direct[ing] ICE officers to consider deterrence of mass migration as a factor in their custody determinations" through firsthand knowledge and data showing that "ICE has been largely denying release to Central American mothers accompanied by minor children since June 2014."  R.I.L.-R, 80 F. Supp. 3d at 174.  These denials are "contrary to past practice" of DHS and, while asserting that there is no policy document, the defendants had "essentially conceded that the recent surge in detention during a period of mass migration . . . reflects a design to deter such migration."  R.I.L.-R, 80 F. Supp. 3d at 175.  Similarly, the plaintiffs in Aracely, R. v. Nielsen, 319 F. Supp. 3d 110 (D.D.C. 2018)("Nielsen"), allege a "de facto immigration policy promulgated by high-level officials in Washington D.C.," which begins in 2014 and is "re-emphasized . . . after the 2016 Presidential election."  Nielsen, 319 F. Supp. 3d at 123-124.  The alleged policy is "designed to serve as a deterrent to asylum seekers" by "ordering local officials to heavily weight immigration deterrence in deciding parole and similar forms of release."  Nielsen, 319 F. Supp. 3d at 123.  The plaintiffs point to data showing that the parole release rate of the asylum seekers who cross a United States Port of Entry is 80% in 2012, but drops to 47% in 2015.  See Nielsen, 319 F. Supp. 3d at 123.  The court in Nielsen finds this action sufficient to show a final agency policy subject to APA review.  See Nielsen, 319 F. Supp. 3d at 138-39.

Importantly, in both of the cases discussed above, the plaintiffs are able to support their allegations of an unwritten policy with data demonstrating such a policy's effects.  Here, however, the Plaintiffs do not provide any evidence that supports their allegation of an unwritten ubiquitous

- 25 -

mixed-claim stay policy. The Plaintiffs make only bare allegations that FEMA has this policy; one of the Plaintiffs, Montoya, alleges that "FEMA refuses to issue me an Administrative Appeal Decision ("AAD") on either claim allegedly because I claimed non-economic damage." Montoya Decl. ¶ 12, at 3. The Plaintiffs do not provide any statistics to support their allegations, however, such as a showing that FEMA has taken this action across all or a majority of its cases. The Court is therefore unable to conclude that FEMA has adopted a blanket mixed-claim stay policy, especially when the Plaintiffs provide a letter which FEMA sends to certain mixed-claim claimants requesting arbitration -- after the Lands/Dolan opinion which announces the availability of noneconomic damages is issued -- in which FEMA states that it shall continue working on moving the claimant's case forward. See Letter Re: Premature Arbitration Request from FEMA to e.g., James Adrian Abreu, at 1 (dated March 4, 2026), filed June 6, 2026 (Doc. 4)("The Claims Office will continue processing your appeal and will issue an AAD."). This letter contradicts the Plaintiffs' assertion that FEMA enters into an unwritten blanket mixed-claim stay policy after Lands/Dolan announces the availability of noneconomic damages, because it demonstrates that FEMA is continuing to work on cases which contain noneconomic damages that choose to go the arbitration route. To the extent that the Plaintiffs argue that FEMA enters into the ubiquitous mixed-claim stay -- not after the Court's decision in Lands/Dolan, but instead after the Court's decision in Old Wood -- the Plaintiffs offer no explanation why the Court's opinion in Old Wood, which invalidates parts of FEMA's arbitration procedures, influences FEMA to create the mixed-claim stay policy for all claimants, months after the Court issues the Lands/Dolan opinion. In conclusion, the Plaintiffs do not present evidence sufficient to persuade the Court that FEMA has an unwritten mixed-claim stay policy for all claimants. In the absence of a demonstrated policy, the Plaintiffs do not challenge a final agency action necessary for the Plaintiffs to have standing under § 706(2) of the APA.

The Plaintiffs request two different forms of relief regarding the mixed-claim stay policy: (i) enjoining FEMA's policy of staying economic claims while noneconomic claims are appealed; and (ii) allowing certain Plaintiffs whose cases have allegedly been stayed by FEMA pursuant to the mixed-claim stay policy to proceed to arbitration. See Proposed Order at 3. The Court enjoins FEMA's alleged practice of staying economic claims while noneconomic claims are appealed. See HPA § 104(d)(1)(A)(i) ("Not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim.").

In accordance with the Court's opinion in Old Wood, if the claimant disputes the award that FEMA offers, the claimant may take this award to arbitration, regardless whether the claimant has completed the administrative appeal process. Specifically, the Plaintiffs request that the Court allow United World and Pendaries Village to proceed to arbitration, because of FEMA's failure to issue a final agency determination within 180 days of their filed Notices of Loss, and that the Court allow Trambley, Montoya, and Griego to "sever their economic claims and proceed to de novo arbitration." Proposed Order at 3. The Court concludes that United World and Pendaries Village may proceed to arbitration, because a dispute has arisen regarding the award which FEMA offers, and once a dispute arises, the claimant may go to arbitration. The Court determines the fact that United World receives only partial Letters of Determination and that Pendaries Village files a subsequent Proof of Loss wherein 180 days have not yet passed since the submission of this most recent Proof of Loss does not defeat the ability of these parties to proceed to arbitration. See Proposed Order ¶¶ 7-8, at 5-6. Although the Hermit's Peak Act provides a 180-day deadline wherein FEMA must make a determination of the amount to be paid on the claim, the Hermit's Peak Act does not tie this deadline to the arbitration provision, which requires only that "a disputed claim [exist] under this Act" and that the claimant "elect to settle the claim through arbitration."

HPA § 104(h)(3)(B).  Accordingly, a dispute may arise before the 180 days that the Hermit's Peak Act awards FEMA to reach a determination on a claim; the filing of a new Proof of Loss does not reset a nonexistent clock for arbitration.  Once the Plaintiffs request some payment, and FEMA does not award that amount, or FEMA makes some offer, even a partial offer, and the claimant does not accept the offer, the claimants may elect to proceed to arbitration.  The expeditious nature of arbitration, intended to be more efficient than a judicial process, supports the Court's conclusion. The Court therefore concludes that both United World and Pendaries Village may proceed to arbitration.  Similarly, Trambley and Montoya, who have received Final Letters of Determination which they dispute, may proceed to arbitration.  See Proposed Order ¶¶ 4-5, at 4-5.  Finally, the Court reiterates its holding in Old Wood that arbitration under the Hermit's Peak Act is de novo arbitration, and that this is the arbitration to which the Plaintiffs are entitled.

> **B.     THE PLAINTIFFS CAN DEMONSTRATE A LIKELIHOOD OF SUCCESS IN PROVING THAT THE COURT SHOULD COMPEL FEMA TO ABANDON ITS ARBITRATION STAY POLICY AND COMPEL FEMA TO MOVE FORWARD WITH ARBITRATIONS UNDER § 706(1) OF THE APA.**

The Court recently issues its opinion in Old Wood, vacating under 5 U.S.C. § 706(2) FEMA's regulations and policies relating to arbitration under the Hermit's Peak Act that: (a) restrict arbitration to a review of the record of any issues raised and decided on administrative appeal, and (b) limit arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal, and discussing how FEMA's regulation that a claimant exhaust an administrative appeal before proceeding to arbitration on a disputed claim, although moot in this case, would also be invalid under the APA.  See Old Wood at * 1, 21-22.  After the Court issues the Old Wood opinion, FEMA sends a letter to at least some claimants seeking arbitration which announces FEMA's arbitration stay policy, stating that "the Claims Office is suspending arbitration proceedings until further notice as we evaluate our legal and administrative options to implement

and/or otherwise respond to this ruling" and explaining that, "[i]f you are currently in communications with JAMS in connection with a request for arbitration, those proceedings will be held in abeyance until further notice.  Additionally, if your arbitration hearing has already been scheduled with JAMS, it is now suspended pending further guidance."  Letter from Arbitration Unit at 1.

The Plaintiffs do not make it clear that they directly challenge this Letter from Arbitration Unit.  In the TRO Memo., however, the Plaintiffs include a paragraph which states:

> FEMA's indefinite freeze of the administrative process constitutes agency action 'unlawfully withheld or unreasonably delayed.'  5 U.S.C. § 706(1).  The appropriate remedy is a direct compulsion order.  Because Plaintiffs have constructively exhausted their administrative remedies, Gallegos v. FEMA, 2025 U.S. Dist. LEXIS 138615, at *15-16 (D.N.M. July 21, 2025), the Court should invoke § 706(1) to compel FEMA to send unresolved claims to arbitration and conduct the de novo review required by Old Wood.

TRO Memo. at 5.  The Plaintiffs acknowledge in the Proposed Order that "FEMA has implemented two distinct administrative blockades that prevent the expeditious settlement of claims.  First, following this Court's decision in Old Wood, FEMA suspended arbitration proceedings."  Proposed Order at 4.  The Court therefore construes this paragraph as a challenge to FEMA's arbitration stay policy under § 706(1) of the APA.  The Court determines that this challenge is likely to succeed.

As discussed above, the Plaintiffs cannot bring a challenge under § 706(1) of the APA to compel agency action either withheld or unreasonably delayed, unless the Plaintiffs can identify a "discrete agency action" which the agency is statutorily required to take.  SUWA, 542 U.S. at 64.  The Plaintiffs point to the portion of the statute which explains that the purpose of the Hermit's Peak Act "mandates 'expeditious' settlement."  TRO Memo. at 2 (quoting HPA § 102(b)(2)).  Again, as already discussed above, however, the requirement of expeditious settlement does not identify any discrete agency action which FEMA must take, and, therefore, the Court cannot sustain

a challenge to FEMA's actions under § 706(1) of the APA on this basis.

There is another portion of the statute, however, that contains a discrete action that FEMA must take, which FEMA is unlawfully withholding through its arbitration stay. The Hermit's Peak Act states: "On establishment of arbitration procedures under subparagraph (A), an injured person that submits a disputed claim under this Act may elect to settle the claim through arbitration." HPA § 104(h)(3)(B). The Hermit's Peak Act authorizes a claimant to take their claims to arbitration as soon as a dispute arises, and FEMA must participate in this process. The claimant's ability to elect arbitration when there is a disputed claim under the Hermit's Peak Act therefore creates a discrete action which FEMA statutorily must take, because FEMA must participate in arbitration. Nothing in the Hermit's Peak Act imposes any time limit on when a dispute arises in the arbitration context. A dispute is "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." Dispute, BLACK'S LAW DICTIONARY (12th ed. 2024). A dispute may arise at any point when there is not an agreement between the parties as to what compensation FEMA owes under the Hermit's Peak Act for a claim. This dispute can occur even before FEMA has issued an initial Letter of Determination on a claimant's claim; if a claimant files its Notice of Loss with FEMA's Claims Office, and FEMA does not pay a requested amount, at that point there is a dispute, and the claimant may elect to go to arbitration. Accordingly, when a dispute arises between a claimant and FEMA which the claimant elects to take to arbitration, Congress requires FEMA to participate in that process.

The Plaintiffs argue that FEMA's actions constitute an unreasonable delay of agency action. See Proposed Order at 7-8. The Court concludes, however, that the Plaintiffs challenge agency action that FEMA unlawfully withholds under § 706(1) of the APA, because HPA § 104(h)(3) requires FEMA's discrete action -- participating in arbitration -- which includes a concrete deadline

-- once an injured person "submits a disputed claim under this Act . . . elect[s] to settle the claim through arbitration," FEMA must go forward with arbitration.  HPA § 104(h)(3).  See Forest Guardians v. Babbitt, 174 F.3d at 1190 ("[I]f an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions . . . a court must compel only action that is delayed unreasonably.  Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.").  The Hermit's Peak Act does not give FEMA the freedom to decide, within "general timing provisions," when to proceed to arbitration.  Instead, once a claimant elects to go to arbitration with a disputed claim, FEMA must go to arbitration.  Congress has set an explicit deadline in HPA § 104(h)(3) which FEMA must follow.  To the extent that FEMA's arbitration stay prevents FEMA from meeting this deadline and proceeding to arbitration, FEMA is unlawfully withholding agency action, and the Court compels FEMA to go to arbitration, with the de novo procedures which Old Wood determines apply, once a claimant with a disputed claim elects to go to arbitration.  See Forest Guardians v. Babbitt, 174 F.3d at 1190 ("The agency must act by the deadline.  If it withholds such timely action, a reviewing court must compel the action unlawfully withheld.").

III.    **UNITED WORLD DEMONSTRATES IRREPARABLE HARM, BUT TRAMBLEY, MONTOYA, AND PENDARIES VILLAGE  DO NOT DEMONSTRATE IRREPARABLE HARM .**

"To merit preliminary injunctive relief, a movant must present a 'significant risk' it 'will experience harm that cannot be compensated after the fact by money damages." State v. U.S. Env't Prot. Agency, 989 F.3d 874, 884 (10th Cir. 2021)(quoting New Mexico Dep't of Game & Fish, 854 F.3d 1236, 1250 (10th Cir. 2017)).  "That harm 'must be both certain and great,' not 'merely serious or substantial.'"  State v. U.S. Env't Prot. Agency, 989 F.3d at 884 (quoting Prairie Band of

Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2009)). "And a speculative or theoretical injury will not suffice." State v. U.S. Env't Prot. Agency, 989 F.3d at 884 (citing RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009)). "The injury must also be 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" State v. U.S. Env't Prot. Agency, 989 F.3d at 884 (quoting Schrier v. Univ. of Co., 427 F.3d 1253, 1267 (10th Cir. 2005)). "If the harm is not 'likely to occur before the district court rules on the merits,' there is no need for preliminary injunctive relief." State v. U.S. Env't Prot. Agency, 989 F.3d at 884 (quoting New Mexico Dep't of Game & Fish, 854 F.3d at 1250). The Court highlights that the heightened standard for disfavored injunctions does not apply to the irreparable injury prong. See Awad v. Ziriax, 670 F.3d 1111, 1126 (10th Cir. 2012).

First, the Court concludes that the Plaintiffs meet their burden of showing that the harms which they allege are sufficiently imminent, certain, and great to justify the imposition of relief. Trambley alleges that her property "was severely damaged by the Hermit's Peak/Calf Canyon Fire of 2022, which destroyed the vegetation and root systems, leading to severe slope instability and catastrophic flooding." Trambley Decl. ¶ 3, at 1. Trambley alleges that, "[f]ollowing the total washout of my dam and spillway last August, the uncontrolled floodwaters have completely destabilized the land" and that the recent flooding has led to deep sinkholes on the property. Trambley Decl. ¶ 5-6, at 1. The most recent sinkhole appears on April 25, 2026, when Trambley falls into a sinkhole on her property. See Trambley Decl. ¶ 8, at 2. Considering that sinkholes recently appear on the property, in the absence of efforts to stabilize the land, the Court determines that the risk of harm in the form of future sinkholes or other further degradation of the land is sufficiently imminent and likely to occur before the Court can rule on the merits of the case so as to demonstrate a "clear and present need" for preliminary injunctive relief. Similarly, Montoya

alleges:

> With each thunderstorm/rain fall the soil stability on my property and properties surrounding me fail and debris and mud flow renders my access road impassable.  Because my home is currently contaminated with widespread mold (basidiospores), I cannot safely shelter in place, and if the road washes out this week, my grandchildren and I will be trapped in a toxic environment with no ability for emergency vehicles to reach us and no safe route to evacuate.

Montoya Decl. ¶ 7, at 2.  The Court concludes that the risk of the inability to access a road or lack of soil stability on Montoya's property, because of rainfall, is a sufficiently imminent harm.  Third, United World alleges that it must defer repairs to "pavement and asphalt that were severely damaged" by the Hermit's Peak Fire which has resulted in "ever-worsening trip hazards," and subsequent flooding and relocation of buildings situated in an "increased flood risk area," as well as financial instability from repairing fire damage.  United World Decl. ¶¶ 5-10, at 1-2.  Further, United World alleges reputational harm, arguing that "[t]he lack of potable water is causing unquantifiable reputational harm and an imminent collapse in enrollment that cannot be retroactively cured by a later damages award; [a]ccessibility for current students, faculty  and employees is cut off for indeterminate periods by flooding events resulting in serious safety issues."  TRO Memo. at 6.   The Court concludes that United World demonstrates a likelihood of imminent, non-speculative injury in the form of continued financial issues, "ever-worsening trip hazards" around its campus, and reputational harm.  Finally, Pendaries Village asserts that "[t]he physical condition of PVCA's property is rapidly deteriorating.  The land suffers from severe, progressive erosion, siltation, and damage to culverts and roads."  Pendaries Village Decl. ¶ 11, at 3.  Pendaries Village states that both Engineering Analytics, Inc., and the NRCS-Geological Service Unit perform site visits after the fire, and acknowledge the risk of landslides following damage from the fire.  See Pendaries Village Decl. ¶ 12-14, at 3-4.  Although the latest site visit is in the summer of 2025, the Court concludes that the ongoing risk of an imminent landslide is sufficient to demonstrate

the likelihood of imminent injury.

The Plaintiffs must also demonstrate that there is a significant risk that harms which they are likely to suffer are irreparable. The irreparable harm prong's overarching inquiry "compares (i) what would happen if the preliminary injunction were not granted; with (ii) what would happen if the preliminary injunction were granted; and then (iii) asks whether the difference between (i) and (ii) is irreparable." Logan v. Pub. Emps. Ret. Ass'n, 163 F. Supp. 3d 1007, 1030 (D.N.M. 2016)(Browning, J.). First, United World alleges, among other injuries, reputational harm stemming from the land's continued degradation of the land as a result of damage from the Hermit's Peak Fire. See TRO Memo. at 6; Proposed Order at 7. In certain circumstances, reputational harm may qualify as irreparable harm. See Planned Parenthood Ass'n of Utah v. Herbert, 828 F.3d 1245, 1264 (10th Cir. 2016)(concluding that there is a sufficient showing of irreparable harm, because the Planned Parenthood Association of Utah demonstrates "a likelihood that it will suffer irreparable reputational harm if a preliminary injunction is not issued"). In such cases, however, damage to one's business or reputation is not presumed, but must be proved to some extent during the preliminary injunction hearing. See, e.g., Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1157 (10th Cir. 2001)(presenting testimony regarding damage to reputation).

United World testifies that United World has lost donors and summer program opportunities because of the ongoing damage to its campus from the Hermit's Peak Fire, and that its enrollment is less after the damage from the fire.

> [O]ne of our funders stopped funding $200,000 a year in scholarships for students citing the water issue, the ongoing water shortage damages . . . . The matter of the appearance of our campus, and funders and potential families of students who could pay to attend our school not wanting to send their children to a school that frequently has water shortages. Secondly, we've lost summer programming that's very important to our finances due to the fire . . . . And, you know, two years in a row they tried to use our campus, and they decided they did not like having to evacuate during their programming and they decided not to come back.

Tr. at 79:5-7 (Jackson), 80:11-81:7 (Jackson). Once a student or program chooses not to attend or return to a school, it is difficult for that school to regain that business. Schools often rely on word of mouth and reputation to attract students. Once a school loses the goodwill of its donors and the student community, it is difficult, if not impossible, to regain entirely that goodwill. Accordingly, the Court determines that the damage to United World's reputation, which it will continue to suffer until it is able to repair the damage which the Hermit's Peak Fire causes to its land, constitutes imminent and irreparable damage.

The remaining Plaintiffs, however, do not present any imminent, irreparable harms. The harms which they allege, various damages to property, are reparable by economic damages, and therefore do not satisfy the requirement for a TRO. Various Plaintiffs allege the possibility of physical injuries -- e.g., safety threats from landslide (Pendaries Village), see Proposed Order at 7 ("PVCA face[s] severe safety hazards"); the Court determines that extrapolating personal injuries from likely imminent damages to land is too speculative to sustain a conclusion of imminent harm. Finally, the Plaintiffs argue that the inability to recover interest on their claims because of a statutory bar on recovery of interest under the Hermit's Peak Act constitutes irreparable harm. See Proposed Order at 7 ("Plaintiffs cannot recover damages for the time-value of FEMA's delay."). The Court agrees with the Plaintiffs that interest is not recoverable under the Hermit's Peak Act. See HPA § 104(c)(3)(B)(i). The Court disagrees, however, that this inability to recover interest constitutes an imminent irreparable harm, because the Plaintiffs do not point to what imminent harm the inability to recover interest actually poses to the Plaintiffs. It is plausible that the remaining Plaintiffs' claimed imminent harms, damage to property, are fully compensable without the payment of interest. Accordingly, the Court concludes that Trambley, Montoya, and Pendaries Village do not show a likelihood of irreparable harm, and, the Court therefore does not grant the TRO as to these

Plaintiffs.  See Dine Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1282 (10th Cir. 2016)("In [Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008)], the Court overruled the Ninth Circuit's application of a modified preliminary injunction test under which plaintiffs who demonstrated a strong likelihood of prevailing on the merits could receive a preliminary injunction based only on a possibility, rather than a likelihood, of irreparable harm.").

**IV.      THE BALANCE OF EQUITIES WEIGH IN FAVOR OF GRANTING THE TRO.**

When considering the balance of equities, the third and fourth TRO factors, the balance of equities and the public interest, merge when, "like here, the government is the opposing party." Aposhian v. Barr, 958 F.3d at 978.  Under the heightened standard of review, the Plaintiffs must make a strong showing that their threatened injuries outweigh any injury to FEMA that granting the injunction causes.  The Court determines that the Plaintiffs make this heightened showing.

FEMA argues that it "would be harmed by being forced to send undetermined claims to arbitration, in violation of Congress' intent and direction, and ultimately disburse payments with little to no recourse of clawing back these funds should FEMA ultimately prevail in this litigation." Response at 22.  FEMA also maintains that this will "also harm other claimants whose payments may be diminished or unavailable if funds are exhausted paying claims that are later determined to be unlawful or erroneous." Response at 22.  In summary, FEMA's injuries include statutory injuries -- the inability to disburse funds according to a procedure which the Court determines is inconsistent with the Hermit's Peak Act's statutory mandate -- and harm to other claimants who may not be able to receive funds if the funds run out paying other claimants.  The fact of potential insufficient funds, however, does not justify refusing to allow a certain group of claimants to proceed to arbitration, so that this group of claimants may receive funds to which the arbitrator determines they are entitled under the Hermit's Peak Act.  By contrast, the injuries which the Plaintiffs allege include harm to

- 36 -

property, e.g, sinkholes, landslides, and potential loss of access roads. The potential injuries to the Plaintiffs in the TRO's absence outweigh the injuries which FEMA could sustain if the Court enters the TRO. Accordingly, the Court determines that the Plaintiffs demonstrate that the balance of harms weigh in their favor sufficient to sustain the Court's issuance of a TRO in this case.

## V.    THE PLAINTIFFS DO NOT NEED TO SECURE A BOND.

The Plaintiffs argue that, if the Court grants their TRO request, the Court should not impose a bond, or in the alternative, impose only a nominal bond. See TRO Memo. at 6. Under rule 65(c), the Court may issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court must consider whether a bond is necessary. See Coquina Oil Corp. v. Transwestern Pipeline Co., 825 F.2d 1461, 1462 (10th Cir. 1987)(concluding that, where a trial court does not "contemplate the imposition of the bond, its order granting a preliminary injunction is unsupportable"). Courts in the Tenth Circuit "have 'wide discretion under Rule 65(c) in determining whether to require security'" and may, therefore, impose no bond requirement. RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1215 (10th Cir. 2009)(quoting Winnebago Tribe of Neb. v. Stovall, 341 F.3d 1202, 1206 (10th Cir. 2003)). When determining whether to impose a bond, a court "'should consider the possible loss to the enjoined party together with the hardships that a bond requirement would impose on the applicant.'" Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell, 100 F. Supp. 3d 1122, 1191 (D.N.M. 2015)(Browning, J.)(quoting Crowley v. Local No. 82, Furniture & Piano, 679 F.2d 978 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984)).

The Court does not require the Plaintiffs to post a bond. Here, a bond would exacerbate the problem that the Plaintiffs hope a TRO will help to rectify -- the damages to land, and the financial

troubles that the Hermit's Peak Fire and FEMA's delay in moving the Plaintiffs' claims through the Hermit's Peak Act claims process is causing.  Further, monetary damages are not at issue in this case; the TRO grants only relief which may make monetary awards under the Hermit's Peak Act awardable earlier than in the absence of such relief.  For these reasons, the Court declines to require the Plaintiffs to post a bond.

**IT IS ORDERED** that: (i) the Plaintiffs' Emergency Motion for Temporary Restraining Order (With Truncated Notice) and Preliminary Injunction, filed June 5, 2026 (Doc. 2)("TRO"), is granted in part and denied in part; (ii) the Court compels Defendant Federal Emergency Management Agency to continue processing Plaintiff United World College's claims, despite United World College's request for noneconomic damages; (iii) the Court compels FEMA to allow United World College to proceed to arbitration; (iv) the Court otherwise denies the Plaintiffs' TRO without prejudice; (v) this TRO expires at 5:00 p.m. on July 27, 2026; and (vi) a hearing on the Plaintiffs' request for a preliminary injunction is set for July 27, 2026, at 10:00 a.m.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Antonia Roybal-Mack
Francheska Bardacke
Sean McAfee
Roybal-Mack & Cordova, P.C.
Albuquerque, New Mexico

　　*Attorneys for the Plaintiffs*

Todd Blanche
　Acting United States Attorney General
Ryan Ellison
　First Assistant United States Attorney

Nicholas Sydow
Rafael Go
Carrie Yang
  Assistant United States Attorneys
United States Attorney's Office, United States Department of Justice
Albuquerque, New Mexico

*Attorneys for the Defendants*